Your Honors, Tiffany Syart, attorney for the petitioner Angelique Luvumbu, representing the petitioner in pro bono capacity. I'm joined by my co-counsel Michael Haravon of Milbank, Tweed, Hadley & McCloy, also in pro bono capacity. I'd just like to say it's an honor to be here today. I'd like to reserve one minute for my rebuttal. Will you watch the clock and... Certainly. Thank you. Petitioner Angelique Luvumbu fled her country, the Democratic Republic of Congo, in late 2001 after experiencing brutal persecution as a result of her political opinion. In particular, her courageous and vocal opposition to the despotic and abusive government in the Democratic Republic of Congo. Petitioner provided compelling and overwhelmingly consistent testimony. The existence and detail and pattern of abuse and persecution suffered by petitioner was specifically corroborated in the country conditions reports. I'd like to address four issues in turn, four areas of legal error. The first is that the IJ misapplied the law with regard to petitioner's establishment that she met the one year threshold. This court retains jurisdiction to review the IJ and the BIA's rulings on this issue. Per Ramadan on rehearing, this was reinstated through the Real ID Act. The IJ misapplied the clear and convincing evidence standard required by 8 U.S.C. 1158 A2B in finding that petitioner had not established her date of entry. Isn't that just a historical fact? I mean, the question was whether the historical fact of when she had entered had been established. And aren't we precluded from reviewing that? Actually, the errors do not require you to, Your Honor, to assess the factual evidence. The IJ's error is that she actually failed to make any sort of credibility finding on the date of entry of petitioner and created effectively a corroboration requirement stating that petitioner had not filed any evidence to support her claim. And that is exactly like Ramadan on rehearing in the sense that it's a matter of a legal error and the failure of the IJ to appropriately apply this clear and convincing evidence standard. Even were the credibility issue to have been imported from the withholding of removal claim, which the BIA attempted to do, this was purely a legal question. The IJ couldn't simply ignore several pieces of corroborating evidence that supported petitioner's testimony as to her date of entry. And therefore, it's a legal error and doesn't require any sort of factual analysis. What's the rule of law which the IJ violated? So help me understand exactly what the legal error was. The IJ, the petitioner is required to establish that she entered by clear and convincing evidence, not clear and convincing documentary evidence. And the law is clear that credibility alone is adequate to establish a date of entry per lota. The IJ simply failed to make any sort of finding with regard to credibility and went immediately to stating that the petitioner had no corroborating documents, and therefore she could not find that she had established her date of entry. It's a clear error of law. It's very clear that per lota that is not the appropriate standard to apply. However, the government hasn't stipulated any of these facts in this particular instance, have they? In fact, they challenged each one of those facts and challenged them before the BIA. Because there was no credibility finding, we would have to simply assume that she's credible. There's no finding there. The error was legal in the sense that she specifically ignored corroborating evidence and then stated that there was none to support the date of entry. The BIA attempts to cure this error by importing the IJ's adverse credibility finding as to the withholding of removal claim in order to cure these legal errors by the IJ, which she cannot do. The assessment of credibility must be assessed on each issue separately, and it cannot simply be imported by the BIA in order to cure the error of the immigration judge. And the ---- Sotomayor, excuse me. What case do you rely on for an issue-by-issue adverse credibility determination being required? Parajib-Real, even if a Petitioner is considered not credible in one instance, they're still they must still be assumed credible in other instances. In addition, the claims that were analyzed are by the immigration judge simply address credibility with regard to the withholding of removal claim, which is a different standard than an asylum claim and a different analysis. In fact, the date of entry isn't relevant to withholding of removal claim. It may be relevant more broadly as far as credibility is concerned, but it's really not significant, nor does it go to the heart of the matter, which is the Petitioner's persecution, as to which she provided consistent and overwhelmingly compelling testimony as to that issue. The BIA, in addition, made a de novo adverse credibility finding. None of those findings was supported by substantial evidence. The BIA simply relied on differing levels of detail in Petitioner's initial one-and-a-half-page declaration prepared without the assistance of counsel, and overwhelming testimony, supplemental declarations, and corroborating evidence, all internally consistent, in order to find against Petitioner. However, however, Counselor, under Mendoza-Manimbu, deference is given to the IJ's credibility determination, because the IJ is in the best position to assess the trustworthiness of the testimony. And, therefore, we have to give some deference to her viewing, or to the IJ, BIA then, doing what they have to do. And after that, we have to find is there any substantial evidence to support the situation. Here, there certainly was some problems in relation to the rape incident, given the letter and the testimony. Certainly, there was some differences as to her suggesting she was a political activist, and then she didn't know much about the dialogues. Then, when they finally got to the documentary evidence, the medical report looked like there had a date forged. The ID card looked like it was altered. The article from the paper not authentic. Doesn't that seem to be enough substantial evidence to sustain what the BIA did? None of those findings was supported by substantial evidence, Your Honor. And the IJ specifically acknowledged, I mean, the BIA specifically acknowledged that the IJ made errors in her findings and said, and that's why they made a de novo adverse credibility finding. None of their findings was supported by substantial evidence. And while it's unclear if what they relied on per the IJ, per the IJ's credibility findings, none of those was supported by substantial evidence. And it's clear that the IJ was ---- Maybe you could give us your definition of what substantial evidence is. Sure. I mean, I tried to go through having been in the trial court before and knowing that I have a substantial evidence standard of review and knowing when it goes to the appellate court that if I find substantial evidence or that if I find certain things that they have to find that I have no substantial evidence underneath what I'm doing. It seemed a little difficult for me, given just merely these factors, if I don't even bring in the burning incident, which they also relied on to some extent. But if I just rely on these instances, leaving that out, it seems to me that meets the standard. In each case, I think my briefs make clear that neither ---- none of these issues was actually an inconsistency. And if it was, it was insignificant and not go to the heart of the matter, which is the standard by which we assess credibility. And the IJ, her bias and supposition, unfortunately, were pervasive and really denied Petitioner a full and fair hearing. I'm going to have to stop myself right there in order to have a few moments for my rebuttal. But thank you very much for your time. Thank you. Good morning, Your Honors. I am Gladys Stephens on behalf of the Attorney General, now Mr. Keisler. Under Section 1158A3 of the U.S. Code, this Court doesn't have jurisdiction to review the agency's determination that Petitioner failed to establish a date of entry, therefore to establish that not a date of entry, but that she failed to establish that she timely filed her application for asylum. Counsel relies on this Court's recent decision in Ramadan. However, upon reading of Ramadan, it's clear that that case deals with the application of law to a set of undisputed facts, that is, the application of whether country conditions had changed or whether extraordinary circumstances had been met, to a set of undisputed facts which were, in that case, that it was clearly untimely after the one presented after the one year term. In this case, however, we don't really have an application of law because and even if we did, we have a set of disputed facts, since at this point of the journey we still don't know what date she entered the United States. Excuse me. Did the IJ make legal errors in its credibility, not making a specific adverse credibility determination with respect to the Petitioner's testimony? The immigration judge did not need to make it would have been right if he did, but she did, but did not need to make an adverse credibility finding as to the date of entry because and to a certain extent she did make it. When we read the IJ decision, she does specifically state that on her testimony alone, she would not determine date of entry. And then as you go ahead and start reading the decision, you realize that it's based on an adverse credibility finding as the IJ found so many inconsistencies in every single one of the stories that Ms. Levumbu tried to put forth that the immigration judge felt she was not a credible witness. And as such, she looked to corroborating evidence to establish the date of entry, yet Petitioner could not present corroborating evidence. All she could present was her friend's, Ms. Lemus' declaration, but the declaration really goes to when she arrived in L.A., not when she arrived in the United States. And Ms. Levumbu herself said that she first arrived in Atlanta, not L.A., so that can't be counted as supporting evidence as to date of entry. Does the IJ have to make a credibility determination as to each issue in the case? No, Your Honor. The credibility determination is based on her testimony as a whole. It's based on her demeanor as well as the statements she makes, the testimony she gives before the court, juxtaposed to whatever corroborating evidence she presents. It's not an issue-by-issue determination. As to the credibility findings, this Court is bound by the substantial evidence in the record, and unless this Court finds that the evidence in the record is so compelling to the contrary of the agency's determination, it must affirm the agency's determination whether this Court agrees or not, so long as it's supported by substantial evidence on the record. The 38 pages produced by the agency, both in the IJ decision together with a Board decision, provide sufficient specific and cogent reasons for the adverse credibility finding. I'm sorry, Your Honors. I'm a little bit worried, maybe changing from credibility to the full and fair hearing. Reading the hearing that happened there, it seems to me that this was certainly an IJ who was pretty aggressive. One could not say that what happened in that hearing was detached. I mean, the IJ went right after that person. Can I really find, based on this record, that there was a fundamentally fair hearing, or was it fundamentally unfair, which is of some worry? I know that there's a case, Malconian, and I may not have all these cases right because I'm from Idaho, and I may not pronounce them all exactly correct, but Malconian kind of talks about one can be aggressive, but when I read that hearing, I was quite worried about that. Maybe you could address that, because that would undo everything that we have done here if the person didn't even get a good hearing. Certainly, Your Honor. The fact of the matter is that Petitioner Ms. Levumbo was provided with a full and fair hearing. She had six hearings over the span of two years, of almost two years, out of which four of those hearings were dedicated exclusively to her testimony, her Mr. Dindo's testimony, and to address the documentary evidence presented to buttress her claim. Yes, the immigration judge was quite persistent in the questions she asked, but that is the job of the immigration judge. The immigration judge, unlike a regular judge in a regular civil or criminal trial, is not to sit back. Because she is the fact finder, she has to be certain that she has fleshed out all the details of the complaint, all the D of the complaint, I'm sorry, of the claim. She has to ascertain, to flesh out that there is no doubt in her mind that the story, let's not say the story, the account that an applicant is putting forth is told in its entirety. And on this record, since there were so many inconsistencies between the first declaration, the second declaration, the brother's letter, her own testimony, Mr. Dindo's testimony, the declarations by her friend Lema, the alterations in the medical record, the alterations in the ID card, the alterations in the newspaper article, it was her job, in order to guarantee a full and fair hearing, that she would get to the bottom of the issue. And she can only do that by asking the questions that she asked. She can only do that by probing the applicant. So, no, there was no violation to a full, fair hearing. The BIA made a number of its own credibility findings. Wasn't that an error in light of the regulations which say that after September 2002, the BIA can only look at the IJ's decision for clear error? And was there enough of the BIA's review, where it did review the IJ's credibility finding, enough to support that adverse credibility finding? The BIA is precluded from making new findings of fact, and adverse credibility finding is not a finding of fact, and to the extent that the IJ entered into a de novo review of the record, it was so exclusively for the one-year credibility finding, which the board wasn't sure if the immigration judge had made the finding or not. To the extent we understand the board's decision, we see that if it had adopted the IJ's decision, then it would have been precluded from making those adverse credibility findings. But since it didn't, it reviewed the IJ for clear error. The board needed to look at the record and see, you know, are these things credible? And what the board found was that the IJ, at the end of the day, she didn't commit clear error in her adverse credibility findings, whether the board agreed or not with them. At one point, the board says, you know, maybe I wouldn't have agreed with all of them. But the board couldn't, because it didn't agree with them, couldn't go ahead and say, well, this was credible and this was not credible, and the IJ was wrong about it because there was no clear error on the records as to the adverse credibility findings. I hope that answers your question, Your Honor. If the adverse credibility finding is not a finding, a fact, are you saying that's a legal question? No, I'm saying that a credibility finding is like withholding of removal, and CAD is something that can only be reviewed for substantial evidence of the record. And as long as there is substantial evidence in the record to support it, and in this record there is, because to this day, regarding her 98 arrest, we don't know whether she was arrested for organizing a strategy meeting or for participating in a rally or for being a main speaker in the rally. We don't know if she was burned because she refused to name the names of other opposing members or if she was burned because she refused to tell the party's secret. We don't know if she was only beaten and burned or if she was beaten and raped. We don't know if in her 2001 arrest, we don't know what happened when she was arrested. She first says that when they took me to the prison house, I was placed with two other women in a cell, and then the next day I struggled with soldiers who eventually hit me. I went unconscious, and then they raped me. But then on her second declaration, she says that she was taken to a small dark cell. Yet in her testimony, she says that everyone was in separate small cells. As to her accounts in 2001, we're not clear as to why she spoke out on the radio. She first says that she spoke out on—yes, Your Honor. We're out of time now. Thank you. Oh, I'm sorry, Your Honor. If there are no further questions, then thank you. Thank you very much. You're welcome. I'll be brief. Thank you again for your time. As an initial matter, the government can't rely on grounds that were not relied on by the IJ or the BIA in attempting to support an unsupported credibility finding, which counsel attempted to do, and therefore that's not—per Al-Nagzhar v. Gonzales, that's inappropriate. This court has—the IJ made no credibility finding on petitioner's date of entry. Further, the IJ ignored several pieces of documentary evidence supporting IJ's date of entry, not only Lehman's declaration, the declaration of Jewell Boyle, the declaration of her brother, the news article. These are—you cannot—the IJ can't simply ignore evidence when it behooves her and then look at evidence when it supports her adverse credibility finding. And therefore, the petitioner is required to have some hearing on her credibility as to her date of entry. That is her basic right. Finally, the IJ engaged in pervasive supposition and conjecture in order to mischaracterize the record, and specifically did mischaracterize the record in several instances with regard to petitioner's knowledge with regard to her political party. And therefore, this case must be remanded in that instance. Thank you so much for your time. It's been a pleasure. Thank you. This case is submitted.
judges: Nelson, Ikuta, Smith